UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JON ERIC CHANEY,

        Plaintiff,

    v.                                  No. 23-cv-3652 (VSB)(SC)

GENE SZYMANSKI and LOCAL 32BJ,
SEIU,

        Defendants.

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS RULE 12(b)(6) MOTION TO DISMISS**

Respectfully Submitted,
J. Patrick DeLince, Esq.

DeLince Law PLLC
299 Broadway, 13th Fl.
New York, NY  10007
212 382-3544
jpd@delincelaw.com

I.      INTRODUCTION ..................................................................................... 1

II.     SUMMARY OF MATERIAL FACTS. ................................................................ 2

III.    ARGUMENT ........................................................................................... 6

**POINT I**

The Employer Breached the CBA and The Union Breached Its Duty of Fair
Representation .................................................................................. 7

   A.  Plaintiff's DRF Claim is Timely Filed ...................................... 7
   B.  Plaintiff Has Set Forth Sufficient Facts to Withstand a 12(b)(6) Dismissal ........ 8

**POINT II**

The Plaintiff Has Set Forth a Viable Claim Alleging Discrimination Under The New
York City Human Rights Laws .............................................................. 13

   A.  Statute of Limitations ....................................................... 13
   B.  Disability Claims ............................................................ 13
   C.  Retaliation Claims .......................................................... 17
   D.  Claims Against Szymanski ................................................... 17

IV.     CONCLUSION ....................................................................................... 18

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. O'Neill,*
    499 U.S. 65 (1991) ...................................................................................9

*Amalgamated Assn. of St. Elec. Ry. & Motor. Coach Employees of Am. v. Lockridge,*
    403 U.S. 274, 301
    (1971)………………………………………………………...................................10

*DelCostello v. Int'l Brhd. of Teamsters,*
    462 U.S. 151 (1983) ............................................................................ 7,8

*Figueroa v. Foster,*
    864 F.3d 222, 234 (2d Cir. 2017) ......................................................  9

*Ford Motor Co. v. Huffman,*
    345 U.S. 330, 338 (1953)..................................................................... 9,11

*Fowlkes v. Ironworkers Local 40,*
    790 F.3d 378 (2d Cir. 2015) .............................................................. 9,11

*Foy v. Pratt & Whitney Grp.,*
    127 F.3d 229 (2d Cir. 1997) .............................................................. 11

*Ghartey v. St. John's Queens Hosp.,*
    869 F.2d 160, 165 (2d. Cir. 1989) ....................................................  8

*Haight v. NYU Langone Med. Ctr., Inc.,*
    2014 WL 2933190, (S.D.N.Y. June 27, 2014)....................................  14

*LaCourt v. Shenanigans Knits, Ltd.,*
966 N.Y.S.2d 347 (Table), (Sup. Ct. 2012)..........................................  9

*NLRB v. Local 282, Intl. Board of Teamsters,*
    740 F.2d 141, 147 (2d Cir. 1984) ......................................................11

*EEOC v. Port Auth. of N.Y. & N.J.,*
    768 F.3d 247 (2d Cir. 2014)................................................................12

*McMillan v. City of New York,* 711 F.3d 120 (2d Cir. 2013) ................................  10,12

*Shah v. MTA N.Y.C. Transit*, No.
  12 CV 4276 (ERK) (RLM) (E.D.N.Y. Feb. 8, 2013) ........................................... 13

*Vaughn v. Air Line Pilots Assn., Intl.*,
  604 F.3d 703 (2d Cir. 2010) .................................................................10,12

*Velez v. Girraphic LLC*,
  20 Civ. 5644 (JPC), (S.D.N.Y. May 10, 2021) .................................... 14

*Vig v. New York Hairspray Co., L.P.*,
  67 A.D.3d 140, 147 (1st Dept. 2009) ......................................... 9

*White v. Interfaith Medical Center and Local 1199*,
  168 F. 3d 615, 620 (2nd Cir. 1999) ....................................... 7

**Statutes**

N.Y.C. Admin. Code § 8-107 *et seq*. ........................................*passim*

Labor Management Relations Act Section 301, 29 U.S.C. § 185 ..........................*passim*

National Labor Relations Act (NLRA).................................................... *passim*

NLRA Section 301(a), 29 U.S.C. § 185(a) ..............................................1

I.    **INTRODUCTION**

Plaintiff, Jon Eric Chaney ("Chaney" or "Plaintiff") by and through his counsel, submits this memorandum of law in opposition to Defendants' Service Employees International Union, Local 32BJ ("Local 32BJ" or "Union") and Gene Szymanski ("Szymanski") (collectively, "Defendants") motion to dismiss this action filed by Defendants, pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

Plaintiff brings this hybrid § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 158/ fair duty of representation guaranteed by the NLRA, 29 U.S.C. §185(a) *et seq.* against his Union ("DFR").  Plaintiff also brings claims of discrimination disability, and perceived disability and failure to accommodate and retaliation for opposing discrimination and harassment in the workplace based on race and sex, all under the New York City Administrative Code § 8-107 *et seq.* and 1(c) against the Union and Gene Szymanski, in his individual capacity.

Plaintiff asserts that he was wrongfully terminated on September 1, 2021 from his employment as a doorman at Lumiere Condominium ("Lumiere" or "the Building"), after having worked there for 10 years without incident, for being late to work by an hour on August 29, 2021. Although Plaintiff had explained to the managing agent AKAM Associates, Inc. ("AKAM") and the Union that he had overslept due to medication that had not been properly calibrated, he was nevertheless terminated. Besides the fact that the lateness was a minor infraction, Plaintiff was treated less well than other doormen who were often late for work and had not suffered termination. The Union and Lumiere used the guise of a Last Chance Agreement ("LCA") as a pretext to terminate an employee with a disability. Moreover, Plaintiff contends that Union unfairly represented him by reneging on a promise the Union had made to him at the time he reluctantly, and under duress, signed the Last Chance Agreement ("LCA").

II.   **SUMMARY OF MATERIAL FACTS**

This summary of material facts relies on Plaintiff's Declaration which amplifies Plaintiff's *Pro-se* Complaint [Rowen Decl. ¶4 Ex. A]. The facts set forth in Plaintiff's Declaration are also incorporated in a Proposed Amended Complaint filed as a cross-motion to the Defendants' 12(b)(6) motion to dismiss.

Plaintiff is a 42-year-old white male (JEC Decl. ¶1). He worked as a doorman and concierge in a residential building, known as Lumiere Condominium, located at 350 W. 53rd St. New York, N.Y. for about 10 years, starting during the summer of 2012 until his termination on September 1, 2021. (JEC Decl. ¶2). AKAM Associates Inc. manages the day-to-day operations of the Building and Michael Irizarry ("Irizarry"), is the superintendent of the Building. (JEC Decl. ¶3). Plaintiff was also a member of Local 32 BJ and the terms and conditions of his employment were governed by the collective bargaining agreement ("CBA") between Employer and the Union. (JEC Decl. ¶¶6-7). Gene Szymanski is the Union representative (JEC Decl. ¶18). By February 2021, Plaintiff had worked at the building for over 8 years without reprimand or discipline (JEC Decl. ¶8). He worked alongside a staff of seven doorman/concierge and a porter. Jason Figueroa ("Figueroa") was a colleague doorman who worked at the building and Jose Diaz ("Diaz") was the sole porter. (JEC Decl. ¶9). Plaintiff was the only non-Hispanic White male among a staff of all Hispanic males. (JEC Decl. ¶10).

Plaintiff was treated disparately when compared to the other staff members. He would often complain about Diaz's constant and baiting verbal attacks and racially charged discrimination against him. He would make statements like "kill the white man and kill him until he's dead" and he would always say other comments, such as "the white man is the devil, the white man is the

devil, evil the white man is the devil." Some of these statements were witnessed by the superintendent Irizarry. (JEC Decl. ¶10).

Plaintiff would complain to Irizarry who would tell Diaz that he had to stop harassing Plaintiff several times but Diaz would not stop. Also, Plaintiff was not permitted to be late to work, while my coworkers were not reprimanded for lateness. Plaintiff was not permitted to keep food in the fridge, while my coworkers kept food in the fridge.

Figueroa would often make sexually explicit comments, including crude comments about the size of his penis or homophobic statements about the tenants. Figueroa was aware that Plaintiff was uncomfortable with his "trash talk" yet he continued to taunt him. Irizarry would also tell Figueroa to stop harassing him, to no avail. Despite the disparate treatment and harassment, Plaintiff continued to do my job. (JEC Decl. ¶10).

On May 8, 2020, Plaintiff was injured at work when his head hit against a metal bar of a luggage cart, while he was attempting to stop two intruders from entering the lobby. As a result of that injury, at times Plaintiff suffers from dizziness and poor, unsteady balance, and experiences painful headaches at times. (JEC Decl. ¶ 11). He logged in his injury as an incident report at the Building and filed a NYS Worker Compensation claim. (JEC Decl. ¶ 12). The injury caused a noticeable bump on his head which prompted taunts by colleagues. (JEC Decl. ¶ 13).

On or about February 9, 2021, Figueroa unfairly instigated an argument with Plaintiff during which he voiced many of his grievances about the delivery of certain packages, and the condition of the storage closet and the bathroom. During the exchange, the conversation became heated, and Irizarry intervened and calmed things down. (JEC Decl. ¶ 13). Both men filed a police complaint against the other. (JEC Decl. ¶ 13). On February 25, 2021, Plaintiff was informed by AKAM that he was indefinitely suspended without pay pending a final determination of the incident. Figueroa

3

on the other hand was not suspended. (JEC Decl. ¶ 16). Plaintiff voiced his disagreement with the suspension and pointed out to Justin Estevez, an executive at AKAM, that he felt it was unfair and reminded Estevez he had been injured on the job and that he had union rights. Estevez's response to Plaintiff was "That's your problem." Plaintiff understood that statement to mean that one of the reasons he was being suspended was due to his alleged delusionary belief that he had rights because of his injury. (JEC Decl. ¶ 17).

On March 19, 2021, Plaintiff met with Gene Szymanski from the Union. Szymanski pulled out a LCA which Szymanski insisted that he signed in order to return to work. Szymanski slammed his hand on the desk and demanded that Plaintiff sign the LCA immediately if he wanted to go back to work. Plaintiff was also denied an attorney to speak with before signing the LCA. During their conversation, Plaintiff indicated that he was not comfortable signing the agreement and losing his union rights. In response, Szymanski, to induce Plaintiff made two statements to him: "As long as you don't raise your voice, you'll be fine." He further assured Plaintiff, during the conversation, that should Plaintiff be terminated from the building a transfer to another building would be possible. "I believe the transfer to another building will be on the table. I'll speak to Justin [at AKAM] …we can put you somewhere else," he stated. (Plaintiff possesses a recording of that latter statement.) (JEC Decl. ¶¶ 19-21). Based on these promises, Plaintiff signed the LCA and noted next to his signature "received" to note that he was signing the LCA under protest and without the benefit of the advice of counsel. (JEC Decl. ¶ 22).

Plaintiff returned to work on March 23, 2021, and worked without incident until August 29, 2021. On that day he was 1 hour late for work due to a new dosage of prescription medication he had taken the night before, that had not been properly calibrated. (JEC Decl. ¶ 24). After receiving

a call from Irizarry inquiring as to his whereabouts, Plaintiff rushed down to work and worked the entire day without incident. He also did not take his 1-hour break to make up for the lateness. (JEC Decl. ¶ 24). On September 1, 2021, Plaintiff received a telephone call conference from Irizarry and Isaac Pomper ("Pomper") from AKAM.   Pomper stated that Plaintiff was receiving a write-up for a no-call no-show and that since Plaintiff was on an LCA it would result in a termination that was effective immediately. Plaintiff also received a letter dated the same day confirming the same. (JEC Decl. ¶ 22). On September 3, 2021, Plaintiff filed a grievance with the Union stating that he was unjustly terminated.  (Rowen Decl. Ex. "E").

On November 5, 2021, Lawrence Sean Schwartz, Ph.D., Plaintiff's licensed psychotherapist, an extensive letter to Szymanski explaining how the medication that Plaintiff had been taking during the last two weeks of August had not been well calibrated, causing him not to hear the alarm clock that day, which resulted in Plaintiff's 1-hour delay. He also stated that Plaintiff's condition was diagnosed as the beginning of "serotonin syndrome" caused by the high dose of an antidepressant. (JEC Decl. ¶ 30).

After two scheduling adjournments at the Building's request, a 2-Step meeting was held three months later on January 13, 2022. (JEC Decl. ¶ 29).  During the meeting, Harry Weinberg, the Building's attorney, stated that the Building did not want Plaintiff back. (JEC Decl. ¶ 33).   On January 28, 2022, Plaintiff received a letter from the Union stating that the Union determined that his grievance lacked sufficient merit to prevail in arbitration.  (JEC Decl. ¶ 37).

An appeal followed before the Union appeal board ("GAB"). On April 6, 2022, Plaintiff received a letter from the GAB adopting the recommendation of not moving forward with the arbitration.  (JEC Decl. ¶ 42).

On November 9, 2022, Plaintiff emailed Szymanski asking for a transfer to another building as had been promised at the time the LCA had been signed on March 19, 2021.  Szymanski responded by email that "…The Union does not place employees in other buildings since we have no control over [whom] the employers hire." This contradicted the statement he had made to Plaintiff to induce me to sign the LCA, which agreement stripped me of all my rights. (Chaney Decl. Ex. "43").

On January 17, 2023, I filed a *Pro se* Summons and Complaint in New York State Supreme Court in New York County (Index No. 100058/2023) against the Union alleging, *inter alia*, DFR and discrimination based on race and disability. (Rowen Decl. Ex. "A") (JEC Decl. ¶46).

## III.   ARGUMENT

Defendant correctly characterizes Plaintiff's *Pro-se* complaint as one within the Union's federal duty of fair representation ("DFR") owed to Plaintiff under the National Labor Relations Act. The parties disagree as to whether Plaintiff timely filed his DFR claim within the 6-month statute of limitations period. Besides Plaintiff's claims being timely, he will be able to show that the Employer breached the CBA and that the Union breached its duty of fair representation.

The Parties also disagree on whether Plaintiff has a viable discrimination claim against the Union. Plaintiff maintains that he is not time-barred to bring a claim of discrimination against the Union under the New York City Administrative Code ("City Law") § 8-107 *et seq.* which provides for a 3-year statute of limitation and does not require an agency as a prerequisite to a court filing as the Defendants asserts. Plaintiff has pleaded sufficient factual allegations in the Proposed Amended Complaint to set claims for breach of disability, perceived disability,

failure to accommodate, as well as retaliation for opposing discrimination based on race and sex.

## POINT 1

### The Union Breached its Duty of Fair Representation

A.  Plaintiff's DRF Claim is Timely Filed

Defendants correctly state that the limitations period on a § 301/DFR claim is six months which begins to run when the employee knew or should have known of the breach of duty of fair representation.(See, *DelCostello v. Int'l Brhd. of Teamsters*, 462 U.S. 151, 169-71 (1983) and *White v. Interfaith Medical Center and Local 1199*, 168 F. 3d 615, 620 (2nd Cir. 1999). However, disagree as to the triggering event that commenced the running of the statute of limitations.

Defendants contend that the six-month statute of limitations began to run on April 6, 2022, the date that the Union notified Plaintiff that it would cease further representation of him regarding his discharge. (Defs' Memo at 13-14). However, the Plaintiff's hybrid claim arises out of the Union's decision not to follow through on its promise to transfer the Plaintiff to a different building after Plaintiff was terminated from the Building; the basis of the claim is not the Union's failure to arbitrate the Plaintiff's grievance under CBA procedures, but rather a false misrepresentation and promise made by a Union representative to assist in Plaintiff's transfer should Plaintiff be terminated.(JEC Decl. ¶¶ 19-20).

Defendants further maintain that, even if timely brought, the Complaint fails to allege facts sufficient to state a hybrid § 301/DFR claim. (Defs' Memo at 15). Contrary to Defendants' contentions, the hybrid § 301/DFR claim both is timely and sufficiently alleged in the Proposed Amended Complaint.

7

The operative date for the commencement of the running of the statute of limitations is November 9, 2022—the day that Plaintiff learns of the Union's inaction in transferring him to another building. On that day Plaintiff received an email from Szymanski informing him that "The union does not place employees in other buildings since we have no control over who the employers hire." (JEC Decl. ¶ 45, Ex. 3) That statement is in direct conflict with the statement Szymanski had made to Plaintiff for the purpose of inducing Plaintiff to sign an LCA under duress and without the benefit of counsel. On March 19, 2021 Plaintiff, who was being pressured to sign the LCA, asked Szymanski what would happen if he signed the LCA and then gets terminated. Szymanski "I believe the transfer to another building will be on the table. I'll speak to Justin [at AKAM] …we can put you somewhere else." (Plaintiff possesses a recording of that statement.) (JEC Decl. ¶¶ 19-21).  Thus, November 9, 2022 the date that Plaintiff learns that the Union has no intention of following through with its promise of a transfer, is the operative date. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d. Cir. 1989) (". . . a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."). Having commenced this instant action on January 13, 2023, Plaintiff's claim was timely filed within 6 months.

B.  Plaintiff Has Set Forth Sufficient Facts to Withstand a 12(b)(6) Dismissal

Defendant correctly surmises from Plaintiff's *Pro se* Complaint that Plaintiff is bringing a DFR claim. The elements, as Defendants state, are set forth in *DelCostello v. Int'l Brhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).  "Under federal labor law, a union-represented employee may bring an action against his or her employer and union alleging the dual claims that (1) the employer breached the terms of the applicable CBA covering his employment; and (2) the

union breached its duty of fair representation owed to the employee by failing to redress the employer's violation of the CBA for reasons that are "arbitrary, discriminatory or in bad faith."

Here Plaintiff is able to show that the Employer breached the CBA by terminating a person with a disability and failing to redress the matter when provided medical substantiation of the Plaintiff's condition. The 2018 Apartment Building Agreement between the Realty Advisory Board on Labor Relations Incorporated and the Service Employee International Union, Local 32BJ. Article 23 entitled "No Discrimination" states that "There shall be no discrimination against any present or future employee by reason of race creed color age disability national origin sex sexual orientation union membership or any characteristic protected by law."

The Plaintiff alleges that his employment was terminated for a single instance of lateness after an overdosage of newly-prescribed medication that he was taking to treat a workplace injury, of which his employer was aware, caused him to oversleep on one occasion. (JEC Decl. ¶ 24; Proposed Am. Compl. ¶¶ 53-56). An employer who discharges an employee for reasons constituting unlawful disability discrimination, whether actual or perceived, violates the antidiscrimination provisions of the CBA.

"A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa*, 864 F.3d at 229 (quoting *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 388 (2d Cir. 2015)). "[A] union's actions are arbitrary "only if, in light of the factual and legal landscape of the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953), as to be irrational." *Air Line Pilots Assn. v. O'Neill*, 499 U.S. 65, 67 (1991). "A union's actions are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'"

*Amalgamated Assn. of St. Elec. Ry. & Motor. Coach Employees of Am. v. Lockridge*, 403 U.S.

274, 301 (1971)); *see also Vaughn v. Air Line Pilots Assn., Intl.*, 604 F.3d 703, 709 (2d Cir.

2010). "A union acts in bad faith when it acts with an improper intent, purpose, or motive."

*Spellacy v. Airline Pilots Assn. Intl.*, 156 F.3d 120, 126 (2d Cir. 1998) (citation omitted); *see also*

*Vaughn*, 604 F.3d at 709-10. "Bad faith encompasses fraud, dishonesty, and other intentionally

misleading conduct." *Id.* (citation omitted); *see also Vaughn*, 604 F.3d at 709-10.

It is not disputed that the Plaintiff was terminated for arriving to work one hour after the

start of his shift. (Lyle Decl., Ex. 16-3, termination letter dated Sept. 1, 2021; JEC Decl. ¶ 24;

Proposed Am. Compl. ¶¶ 53-56 ). And it is indisputable that the Plaintiff was late for his shift

because of a medical impairment that he sustained from a job-related injury that was known to

his employer and confirmed by his physician. (Lyle Decl., Ex. 16-4, physician letter dated

November 5, 2021; JEC Decl. ¶ 11; Proposed Am. Compl. ¶ 61). These facts, which existed at

the time of the Plaintiff's discharge, were  sufficient for the Defendants to conclude that the

Plaintiff suffered a disability and that the disability caused the behavior for which he was

terminated. *See McMillan v. City of New York*, 711 F.3d 120, 129 (2d Cir. 2013) ("When the

parties agree that the employer complains of conduct that is the direct result of the employee's

disability, [] there is no need to evaluate whether the employer's adverse employment action

made in response to that conduct is pretextual.") (citation omitted).

The Defendants acted arbitrarily when they perfunctorily processed the Plaintiff's

grievance and refused to pursue it to arbitration on the belief that it would be fruitless. A union

acts arbitrarily if it "ignores or perfunctorily presses a meritorious claim." *Thomas v. Little*

*Flower For Rehab. & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011) (quoting *Vaca v. Sipes*,

386 U.S. 171, 191 (1967)) (additional citation omitted). The Defendants' also refused to make a

10

good faith effort to transfer the Plaintiff to a different work location. The Defendants' response to the Plaintiff's unlawful discriminatory discharge were arbitrary acts, consisting both of intentional conduct and acts of omission, fell "so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests" as to amount to a ratification by the Defendants of the employer's unlawful discrimination of Plaintiff. *See id.* at 547 (quoting *NLRB v. Local 282, Intl. Board of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984); *see also Figueroa*, 864 F.3d at 235 ("The purpose of the duty of fair representation [] can easily be said to encompass a purpose of prohibiting discrimination."). By allowing to go unremedied the employer's breach of the CBA, Defendants' effectively ratified the employer's unlawful discrimination of Plaintiff, which itself was a form of discrimination against Plaintiff. *See* Admin. Code of City of New York § 8-107 (6) (it is unlawful discrimination to aid, abet, incite, compel or coerce the doing of any acts of unlawful discrimination).

The "wide range of reasonableness" accorded a union representative in serving the unit it represents is "subject always to complete good faith and honesty in purpose in the exercise of its discretion." *Ford Motor Co.*, 345 U.S. at 338. The Defendants breached their duty of fair representation by making material misrepresentations about the opportunity for Plaintiff's transfer to another building in the event he was terminated, on which the Plaintiff relied in executing the LCA, and which the Defendants knew or should have known that they were without authority to do. *See Foy*, 127 F.3d 229; *Wynn*, 273 F.3d 153. In fact, Defendant Szymanski stated in his November 9 email to Plaintiff's inquiry about a transfer, words to the effect that the Union has no control over the placement of members in buildings since it is not the employer. Defendants made an intentionally misleading statements about Plaintiff's options in the event of termination, for the purpose of inducing the Plaintiff to sign the LCA, which,

although labeled a "final warning," actually was Plaintiff's first warning. (JEC Decl. ¶ 45; Proposed Am. Compl. ¶ 82). The effect of the Defendants misrepresentations caused Plaintiff to execute the Stipulation and unfairly limit Plaintiff's exercise of nonnegotiable rights granted by all CBAs, such as the right to contest termination and the right to be free from discriminatory employment actions. Thus, it is argued that the Defendants breached their duty of fair representation by acting with respect to Plaintiff arbitrarily, discriminatorily, and in bad faith.

Union additionally breached its duty of fair representation by acting in bad faith in regard to Plaintiff by promising him a transfer to another building in order to induce him to sign a LCA agreement that stripped him of his CBA rights. A promise Szymanski later stated he did not have the authority to execute upon to Plaintiff's grave detriment. Such Union conduct is "arbitrary, discriminatory or in bad faith," and casually connected to job loss.  (See, Memo at 9-10, citing *Vaughn v. Airline Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010); *White*, 237 F.3d at 179 .

It cannot be said from the facts presented in the Proposed Amended Complaint that the Union acted "without hostility or discrimination . . . [in] complete good faith and honesty . . . [and] to avoid arbitrary conduct."  (Defs' Memo at 9-10, citing *Vaca*, 386 U.S. at 177.

Accordingly, the Proposed Amended Complaint sufficiently states a hybrid § 301/DFR claim.

## Point II

## The Plaintiff Has Set Forth a Viable Claims Alleging Discrimination
## Under The New York City Human Rights Laws

### A.  Statute of Limitations

Discrimination claims brought pursuant New York City Administrative Code § 8-107(1), maybe

filed (3) three years from the date of any allegedly discriminatory act. N.Y. C.P.L.R. § 214(2);

N.Y. City Admin. Code § 8-502(d). *Shah v. MTA N.Y.C. Transit*, No. 12 CV 4276 (ERK) (RLM)

(E.D.N.Y. Feb. 8, 2013). Further, contrary to Defendants' belief, Plaintiff is not required to first

file an agency charge for filing a claim, under City Law a litigant alleging discrimination may

elect to go directly to Court. Administrative Code § 8-502 provides in pertinent part as follows:

> Any person claiming to have been aggrieved by an unlawful discriminatory
> practice ... shall have a cause of action in any court of competent jurisdiction ...
> unless such person has filed a complaint with the city commission on human
> rights or the state division of human rights with respect to such unlawful
> discriminatory practice or act of discriminatory harassment or violence. In
> general, a litigant claiming discrimination has the right to file a discrimination
> claim either in court or with an appropriate administrative agency. If the claim
> is filed with the agency, then the court is deprived of jurisdiction to hear the
> matter (see also, Benjamin v. New York City Dept. of Health, 57 AD3d 403 [1st
> Dept 2008])." [1]

Here, Plaintiff was terminated on September 1, 2021, while within the statutory limitations

period.

### B.  Disability Claims

For purposes of a 12(b)(6) motion, a plaintiff alleging racial and/or gender discrimination

need only plead facts that plausibly lend support to an inference of discrimination.

---

[1] It should be noted that the Plaintiff did file a complaint with the New York State Division of Human Rights
(Complaint No. 520-2022-03890) against AKAM Associates, Inc., the managing agent of the Building. The Division
did not serve the Union in that matter.

The City Law provides that it is an unlawful discriminatory practice for an employer, because of an individual's "actual or perceived" disability, to discharge an individual or to otherwise discriminate against an individual in the terms, conditions, and privileges of employment. N.Y.C. Admin. Code § 8-107(1)(a). The NYCHRL defines a disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." *Id.* § 8-102(16). And "physical, medical, mental, or psychological impairment," in turn, covers "[a]n impairment of any system of the body," including the "respiratory organs." *Id.* § 8-102(16)(a). "To establish a case of disability discrimination [under the NYCHRL], a plaintiff must show that she suffers from a disability, and the disability caused the behavior for which she was terminated." *Velez v. Girraphic LLC*, 20 Civ. 5644 (JPC), at *10-11 (S.D.N.Y. May 10, 2021), citing, *Haight v. NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 04993 (LGS), 2014 WL 2933190, at *17 (S.D.N.Y. June 27, 2014) (quoting *LaCourt v. Shenanigans Knits, Ltd.*, 966 N.Y.S.2d 347 (Table), 2012 WL 6765703, at *3 (Sup. Ct. 2012)).

Here, Plaintiff, as detailed in the Proposed Amended Complaint and supported by a letter dated November 5, 2021, to Szymanski, from Lawrence Sean Schwartz, Ph.D., Plaintiff's licensed psychotherapist, who had been treating him since August 2014 that Plaintiff had a medical prescription imbalanced that explained the fact that he had overslept on August 29, 2021. (Rowen Decl. Ex. "D" ) and (JEC Decl. ¶30). Plaintiff contends that the Building and the Union knew of his disability or at least perceive him to be disabled. Yet, the Union permitted the Building to terminate Plaintiff without challenge. Plaintiff has alleged sufficient facts to state a claim for intentional discrimination.

Further, pursuant to the N.Y.C. Admin. Code § 8-107(28), provides for 'cooperative dialogue' with the employee once the employer has notice of a need for accommodation, "[i]t shall be an unlawful discriminatory practice for an employer, … an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation."  The City Law requires a good faith dialogue. No such dialogue took place between the management and the Plaintiff, neither after he was injured on the job or after his suspension after Szymanski had received a detailed letter from Plaintiff's psychotherapist.

As previously described, the Plaintiff was terminated for conduct caused directly by his disability. *See Vig v. New York Hairspray Co., L.P.*, 67 A.D.3d 140, 146, 147 (1st Dept. 2009) ("it an unlawful discriminatory practice for an employer to discharge an employee on the basis of a disability").Plaintiff explained to his employer the medical reason for his lateness and offered to work through his lunch break in order to make up for the lost time. Without considering the availability of the slight schedule modification that was proposed, the Plaintiff's employer terminated him. (JEC Decl. ¶ 24; Proposed Am. Compl. ¶¶ 53-56). *See Vig v. New York Hairspray Co., L.P.*, 67 A.D.3d 140, 147 (1st Dept. 2009) (plaintiff sufficiently pleaded that he suffered from a disability when he was injured during a performance of defendant's production), *lv denied* 19 N.Y.3d 807 (2012); *see also McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013) (plaintiff sufficiently pleaded that he was terminated for disability-causing conduct where he alleged that the reason for his frequent tardiness was that the medication he took to control the symptoms of his mental illness had as a side effect early morning drowsiness). Plaintiff also submitted a letter, dated November 5, 2021, from his treating physician stating the nature of Plaintiff's disability, the nature of the medications he was taking, and the plan of treatment demonstrating that the Plaintiff's

condition was manageable with the proper dosage of medication and that the lateness would not recur. (JEC Decl. ¶ 30; Proposed Am. Compl. ¶ 61). *See McKenzie v. Meridian Capital Group, Inc.*, 9 Misc.3d 1005(A) (Sup. Ct, Kings Co.) (where the employee is asking for leave, the supporting physician's statement should indicate that, given the additional time off, the employee will be able to return to work and perform the necessary functions of the job).

Notwithstanding the Defendants' knowledge of the discriminatory conduct at the time of the Plaintiff's termination, the Defendants failed on behalf of Plaintiff to engage the employer in a cooperative dialogue to investigate the availability of a reasonable accommodation and failed to take any action at all to remedy the Plaintiff's termination, thereby aiding and abetting the employer's unlawful discrimination of Plaintiff. N.Y.C. Admin. Code § 8-107(6), (15), (28)(a); *see also Dillon v. Ned Mgmt.*, 2015 WL 427921 (E.D.N.Y. 2015) (NYCHRL allows liability against the individual defendant for "aiding and abetting" the discriminatory act, provided that liability is first established against the employer); *Stuart v. T-Mobile USA, Inc.*, 2015 U.S. Dist. LEXIS 106155, 2015 WL 4760184 (S.D.N.Y. 2015) (NYCHRL obligates employer to engage disabled employee in good faith interactive process to identify a reasonable accommodation; failure to engage in interactive process itself is a violation of the law and can give rise to independent claim); *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824 (2014) (city HRL places the burden on the employer to show the unavailability of any safe and reasonable accommodation). Thus, the Plaintiff alleges against the Defendants a claim of disability discrimination based on "aiding and abetting" theory (*see* N.Y.C. Admin. Code § 8-107(6), (15)), as well as on the basis of their own discriminatory conduct in failing to engage Plaintiff's employer in a cooperative dialogue to identify the availability of a reasonable accommodation (*see* N.Y.C. Admin. Code § 8-107(28)(a), (15)).

## C. RETALIATION CLAIMS

To make out a claim for retaliation under the City Law, Plaintiff must show that he was engaged in a protected activity, that the employer was aware of the activity, and that the employer engaged in conduct that was reasonably likely to deter a person from engaging in such activity. See, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102 (2d Cir. 2013) "Section 8–107(7) of the NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has … opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7). The standard for maintaining a hostile work environment claim is lower under the NYCHRL, as a plaintiff need only plead "the existence of unwanted [race or sex]-based conduct" because liability under NYCHRL is "determined by the existence of unequal treatment." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting *Williams v. N.Y.C. Hous. Auth.,* 872 N.Y.S.2d 27, 38 (2009)).

Here, Plaintiff in his declaration and in the Proposed Amended Complaint alleges that he had experienced harassment based on race and sex from Figueroa and Diaz and that he had complained about it to management and the Union, but the harassment continued unabated. The Union's knowledge is evident by a letter the Union sent to AKAM management well after the Plaintiff was terminated concerning the harassment. (JEC Decl. ¶¶10, 43) Plaintiff, therefore, has a viable claim for retaliation for opposing discrimination.

### D.  Claims Against Szymanski

We agreed that Szymanski should not be sued under the DFR claim. However, Szymanski may be sued individually under the N.Y.C. Admin. Code § 8–107(1) (c) which provides an employee of a labor organization may be sued for discrimination, as follows:

17

> (c)   For a labor organization or an <u>employee</u> or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person, to exclude or to expel from its membership such person, to represent that membership is not available when it is in fact available, or to discriminate in any way against any of its members or against any employer or any person employed by an employer.

As alleged in Plaintiff's Amended Proposed Complaint Szymanski was a participant in the alleged acts of discrimination that are set forth.

In light of the foregoing, Plaintiff has sufficiently pleaded her claims for discrimination and retaliation under the NYCHRL.

## CONCLUSION

For the reasons set forth above, Defendants' motion under Rule 12(b)(6) dismissing Plaintiff's Complaint should be denied and Plaintiff should be permitted to file the Proposed Amended Complaint.

Dated: July 19, 2023

Respectfully submitted,

*J. Patrick DeLince*

_____

J. Patrick DeLince
DELINCE LAW PLLC
*Attorneys for Plaintiff*
299 Broadway, Suite 1310
New York, New York 10007
212-382-3544
jpd@delincelaw.com