```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JON ERIC CHANEY,                                            :
                                                            :
                                    Plaintiff,              :
                                                            :         23-CV-3652 (VSB)
                 - against -                                :
                                                            :         OPINION & ORDER
                                                            :
LOCAL 32BJ SEIU and GENE                                    :
SZYMANSKI,                                                  :
                                                            :
                                    Defendants.             :
------------------------------------------------------------X
```

Appearances:

J. Patrick DeLince
DeLince Law, PLLC
New York, NY
*Counsel for Plaintiff*

Lyle Douglas Rowen
Service Employees International Union, Local 32BJ
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Before me is a motion of Defendant Service Employees International Union, Local 32BJ, (the "Union") and Defendant Gene Szymanski ("Szymanski"), a field representative for the Union, (together, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Doc. 32), to dismiss the First Amended Complaint of Plaintiff Jon Chaney, (Doc. 31). Because Plaintiff's federal claim is time barred, and, even if not time barred, fails to plausibly allege violations of federal law, and because I decline to exercise supplemental jurisdiction over Plaintiff's claims brought under the New York City Human Rights Law ("NYCHRL"), Defendants' motion to dismiss is GRANTED.

I. **Factual Background**[1]

For almost ten years, from the summer of 2012 through September 1, 2021, Plaintiff worked as a doorman and concierge at Lumiere Condominium ("Lumiere"), a residential building located at 350 West 53rd Street in Manhattan. (Doc. 31 ("FAC") ¶¶ 11, 14.) During that time, Plaintiff was a member of the Local 32BJ Union, which he joined in 2008. (*Id.* ¶ 17.) The terms and conditions of Plaintiff's union representation were governed by a collective bargaining agreement between Lumiere and the Union. (*Id.* ¶ 18.) AKAM Associates, Inc. ("AKAM"), a management company, is Lumiere's "managing agent and runs its day-to-day operations." (*Id.* ¶ 12.) "Neither Lumiere nor AKAM is a party to this action." (*Id.*)

The Lumiere staff is composed of all Hispanic males except for Plaintiff, who is a white male. (FAC ¶ 21.) Plaintiff alleges that certain staff members engaged in verbal attacks and discrimination against him, which Plaintiff complained of to Michael Irizarry ("Irizarry"), the superintendent of Lumiere and Plaintiff's direct supervisor. (*Id.* ¶¶ 13, 22–24.) Unlike the other staff members, Plaintiff was not permitted to arrive late to work or to store food in the refrigerator. (*Id.* ¶¶ 25–26.)

On May 8, 2020, while attempting to stop two intruders from entering the Lumiere lobby, Plaintiff hit his head against a luggage cart. (FAC ¶ 29.) Plaintiff subsequently recorded the incident in the front desk shift log, completed a worker's compensation incident report, and opened a claim before the NYS Worker's Compensation Board. (*Id.* ¶¶ 29–31.) Plaintiff alleges that as a result of this injury, he suffers from dizziness, poor balance, and painful headaches, and is therefore disabled as defined by N.Y.C. Admin Code § 8-102(16). (*Id.* ¶¶ 29, 33–35.)

---

[1] The facts contained in this section are based upon the factual allegations set forth in the First Amended Complaint. I assume these factual allegations to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

2

On or about February 9, 2021, Plaintiff and another doorman, Jason Figueroa ("Figueroa"), had an argument at the building, after which they each filed a harassment police report against the other. (FAC ¶¶ 36–37.) Weeks later, on February 25, 2021, an AKAM Executive, Justin Estevez ("Estevez") emailed Plaintiff to inform Plaintiff that he was indefinitely suspended without pay, pending a final determination. (*Id.* ¶ 38.) During a discussion between Plaintiff and Estevez, Plaintiff expressed his belief that his suspension was unfair, given that this was his first incident, and that Figueroa had not been suspended. (*Id.* ¶ 39.) Plaintiff also informed Estevez that he believed that he had certain rights as a union member who was recovering from an on-the-job injury, and in response Estevez dismissed Plaintiff's assertion, stating "that's your problem." (*Id.* ¶ 40.) "Plaintiff understood that statement to mean that one of the reasons he was being suspended due to his allegedly delusionary belief that he had rights because he was a union member with a disability." (*Id.*)

On March 19, 2021, Plaintiff met with Defendant Szymanski, an employee of the Union who works as a field representative handling labor relations in New York City. (FAC ¶¶ 7, 41–42.) At this meeting, Plaintiff signed a "Last Chance Agreement" which stated that he could return to work as of March 23, 2021, but that this would be a final warning. (*Id.* ¶¶ 44, 48.) When Plaintiff expressed concerns about whether the Last Chance Agreement stripped him of rights under the collective bargaining agreement, and when he asked to speak with an attorney before signing the agreement, Szymanski "slammed his hands on the desk and demanded that [Plaintiff] sign the document immediately" in order to return to work. (*Id.* ¶¶ 42–43, 45.) Szymanski induced Plaintiff to sign the agreement by assuring Plaintiff that he could be transferred to another building in the event his employment at Lumiere were terminated. (*Id.* ¶ 47.) Plaintiff signed the agreement at this meeting, but included the word "received" near his

3

signature to note that he was signing the agreement under protest and without the benefit of the advice of counsel. (*Id*. ¶¶ 48–49.)

On August 29, 2021, Plaintiff accidentally overslept and arrived late to work because the night before he started taking a new dosage of a prescription medication, which he explained to Irizarry. (FAC ¶¶ 53–56.) On September 1, 2021, Irizarry and an AKAM Executive, Isacc Pomper ("Pomper"), informed Plaintiff by letter that because he failed to arrive on time to work, as well as his failure to call (referred to as a "no-call no-show" incident), his employment at Lumiere would be terminated effective immediately pursuant to the Last Chance Agreement. (*Id*. ¶¶ 57–58.) Two days later, on September 3, 2021, Plaintiff filed a grievance with the Union stating that his employment was unjustly terminated. (*Id*. ¶ 59.) On September 27, 2021, Plaintiff received a letter from the Union stating that he should contact Szymanski regarding his grievance. (*Id*. ¶ 60.) On November 5, 2021, Plaintiff's psychotherapist advised Szymanski in "an extensive letter" that Plaintiff had overslept due to taking a poorly calibrated prescription medication. (*Id*. ¶ 62.)

Plaintiff attempted to reach Szymanski through telephone calls and emails, but did not receive an answer. (FAC ¶ 65.) So, Plaintiff went to see Szymanski in person at the Union office on November 10 and December 10, 2021, but the Security Guard told Plaintiff that he was banned from entering the building based on a "directive . . . from a higher power in the Union." (*Id*. ¶¶ 65–66.) The Security Guard also told him that he "should have received a letter" requiring all correspondence to "be done by phone or e-mail." (*Id*. ¶ 66.)

On January 13, 2022, Plaintiff attended by WebEx the next step in his grievance proceeding, referred to as a "Step 2 meeting." (FAC ¶ 68.) In addition to Plaintiff, in attendance at the meeting were Lumiere's attorney, Harry Weinberg ("Weinberg"), Pomper, and Szymanski.

(*Id*.)  During the meeting, Weinberg informed Plaintiff that Lumiere "did not want to take him back."  (*Id*. ¶ 69.)  On January 28, 2022, Plaintiff received a letter from the Union stating that his grievance lacked sufficient merit to prevail in arbitration, which Plaintiff appealed to the Union's grievance and appeal board ("GAB") on or about March 4, 2022.  (*Id*. ¶¶ 74–75.)

Plaintiff's GAB hearing took place on March 23, 2022, and despite Plaintiff's request, the Union did not provide Plaintiff with an attorney.  (*Id*. ¶¶ 76–77.)  At the GAB hearing, the three panelists did not appear to have read the packet of documents that Plaintiff himself submitted.  (*Id*.)  On April 6, 2022, Plaintiff received a letter from GAB, which "stated that Local 32BJ Joint Executive Board had adopted the recommendation of the GAB."  (*Id*. ¶ 78.)  As a result, Plaintiff's appeal was denied on the basis that it lacked sufficient merit to prevail in arbitration.  (*Id*.)

On November 9, 2022, Plaintiff emailed Szymanski and asked to be transferred to another building.  (FAC ¶ 81.)  Szymanski replied, "the Union does not place employees in other buildings since we have no control over who the employers hire."  (*Id*. ¶ 82.)  This contradicted Szymanski's earlier statement on March 19, 2021 that Plaintiff could be transferred to another building in the event that his employment were terminated at Lumiere.  (*Id*. ¶¶ 46, 82.)

## II. Procedural History

Plaintiff filed his complaint pro se in New York state court on January 17, 2023.  (Doc. 6-1.)  On May 2, 2023, the action was removed to this Court.  (Doc. 6.)  On May 8, 2023, Defendants moved to dismiss the initial complaint.  (Doc. 13.)  On June 17, 2023, counsel appeared on behalf of Plaintiff.  (Doc. 21.)  On July 21, 2023, Plaintiff filed an opposition to the motion to dismiss, (Doc. 25), and a supporting declaration, (Doc. 24).  That same day, Plaintiff filed a cross-motion for leave to file an amended complaint, (Doc. 26), a declaration, (Doc. 27),

and a supporting memorandum of law, (Doc. 28). On July 25, 2023, I issued an Opinion & Order granting Plaintiff's cross-motion to file an amended complaint and denying Defendants' motion to dismiss as moot. (Doc. 29.) I directed Plaintiff to file his amended complaint by August 1, 2023. (*Id.*)

Plaintiff filed the First Amended Complaint on July 28, 2023. (Doc. 31.) The First Amended Complaint asserts four causes of action. The first cause of action alleges that the Union violated Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, when it breached its duty of fair representation to Plaintiff. The remaining causes of action allege that the Union and Szymanski discriminated against Plaintiff based on his disability, failed to accommodate this disability, and engaged in retaliation, all in violation of NYCHRL, N.Y.C. Admin. Code §§ 8–107(1)(a), 8–107(7). On August 15, 2023, Defendants filed a motion to dismiss the First Amended Complaint, (Doc. 32), as well as an accompanying memorandum of law, (Doc. 34). On August 29, 2023, Plaintiff filed an opposition brief. (Doc. 35 ("Opp'n").) On August 31, 2023, Defendants filed an attorney declaration in support of their motion to dismiss. (Doc. 36.) On September 5, 2023, Defendants filed their reply brief. (Doc. 38 ("Reply").)[2]

### III. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff

---

[2] On September 1, 2023, Plaintiff filed a letter clarifying that he was not seeking leave to amend the First Amended Complaint. (Doc. 37.)

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int' l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (quoting *Int'l Audiotext Network*, 62 F.3d at 72).

"Rule 12(b)(6) provides the most appropriate legal basis for a motion to dismiss on statute of limitations grounds." *La Russo v. St. George' s Univ. Sch. of Med*, 936 F. Supp. 2d 288, 297 (S.D.N.Y. 2013). "A court accordingly may dismiss a claim on statute-of-limitations grounds at the pleadings stage if the complaint clearly shows the claim is out of time."

*Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (internal quotation marks omitted).

## IV. Discussion

### A. *Hybrid Section 301/Duty-of-Fair-Representation Claim*

#### 1. Applicable Law

"The 'duty of fair representation is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a),' and 'marks the outer boundary of a union's broad discretion to represent members of a bargaining unit.'" *Bejjani v. Manhattan Sheraton Corp.*, No. 12-CV-6618, 2013 WL 3237845, at *6 (S.D.N.Y. June 27, 2013) (internal citations omitted), *aff'd*, 567 F. App'x. 60 (2d Cir. 2014). To prevail on a hybrid section 301/duty-of-fair-representation claim, "a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178 (2d Cir. 2001). "The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." *Id*. at 179.

"[A] union 'has a duty to represent fairly all employees subject to the collective bargaining agreement.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d. Cir. 2010) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *White*, 237 F.3d at 179 (internal citations omitted). A plaintiff must also plead that there was a "causal connection" between the wrongful conduct and the injury. *Id*. To be considered arbitrary, a union's actions must be "so far outside a wide range of reasonableness as to be irrational." *Vaughn*, 604 F.3d at 709. "A

union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Id.* (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).  Bad faith requires a plaintiff to establish that the union engaged in "fraud, dishonesty, [or] other intentionally misleading conduct" with "an improper intent, purpose or motive."  *Id.* at 709–10 (internal quotation marks omitted); *see also Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999) ("Bad faith requires a showing of fraudulent, deceitful, or dishonest action.").  A court's review of a union's actions "must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991).

A hybrid section 301/duty-of-fair-representation claim against a union is subject to a six-month statute of limitations, which begins to run when the employee knew or should have known of the breach of the duty of fair representation. *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014).  In determining the timeliness of a hybrid claim, courts analyze factual allegations individually. *See, e.g., Blossomgame v. New York's Health & Human Serv. Union*, No. 02-CV-1594, 2004 WL 2030285, at *8 (E.D.N.Y. Sept. 10, 2004) (determining that claims brought prior to plaintiff's demotion were time barred, but those raised after demotion were timely).

### 2. Application

Defendants acknowledge that Local 32BJ Union is a labor organization as defined under Section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5), that represents employees "in an industry affecting commerce" within the meaning of Section 301(a) of the

NLRA, 29 U.S.C. § 185(a). (Doc. 36 ¶ 2.) The parties do not dispute that Plaintiff's hybrid section 301/duty-of-fair-representation claim is subject to a six-month statute of limitations; however, they disagree concerning when the limitations period began to accrue. As an initial matter, although the First Amended Complaint does not plainly state which conduct supports Plaintiff's claim, in his opposition, Plaintiff clarifies that this claim is based solely on Plaintiff's allegation that Szymanski "intentionally misled" Plaintiff and induced him to sign the Last Chance Agreement on March 19, 2021. (Opp'n 7–8.) Indeed, Plaintiff acknowledges that any other potentially actionable conduct as alleged in the First Amended Complaint is time barred. (*Id.* at 7.)

The meeting between Plaintiff and Szymanski occurred on March 19, 2021, well outside the six-month window preceding Plaintiff's pro se complaint, which was filed on January 17, 2023. (*See* Doc. 6-1.) However, Plaintiff contends that the limitations period did not begin to run until November 9, 2022 when Plaintiff first learned of the falsity of the statements made by Szymanski. (Opp'n 8.) Specifically, on November 9, 2022 Szymanski emailed Plaintiff that the Union lacked the authority to find Plaintiff alternative employment in other buildings. (FAC ¶ 82.)

Plaintiff's argument that his claim is not time barred fails for several reasons. First, even generously construing Plaintiff's last date of representation by the Union,[3] the Union ceased representing Plaintiff in the Lumiere matter on April 6, 2022 when it adopted the recommendation of the GAB and denied Plaintiff's appeal. (FAC ¶ 78.) Thus, to bring a timely claim, the very latest that the Union could have breached its duty was on or just prior to April 6,

---

[3] Although Plaintiff's employment with Lumiere was terminated as of September 1, 2021, it is unclear whether, as a factual matter, his union membership was coterminous with his employment.

2022, nearly ten months before Defendant filed his initial complaint. *See Mahamadou v. 1199 SEIU United Healthcare Workers E.*, No. 15-CV-7439, 2016 WL 3566235, at *3 (S.D.N.Y. June 24, 2016) (dismissing duty-of-representation claim as time barred where union membership was terminated more than six months prior to filing of claim).  Second, even putting aside the issue of when the Union ceased representing Plaintiff in connection with his employment at Lumiere, Plaintiff "reasonably should have known," *see Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003), of any alleged breach of the duty prior to November 9, 2022, *see Demchik v. Gen. Motors Corp.*, 821 F.2d 102, 105 (2d Cir. 1987) ("[T]he statute of limitations begins to accrue . . . when the employee had actual or constructive notice that the union has breached its duty of fair representation.").

There were several incidents prior to the November 9, 2022 email Plaintiff received from Szymanski that should have put Plaintiff on constructive notice of any alleged breach.  For example, after Plaintiff filed his grievance, he received a letter in September 2021 from the Union instructing him to contact Szymanski.  (FAC ¶¶ 59–60.)  However, despite attempting to contact Szymanski by phone, email and in person, Plaintiff never met or made contact with Szymanski through those efforts.  (*See id.* ¶¶ 65–66.)  After Weinberg informed Plaintiff during the Step 2 meeting that Lumiere "did not want to take him back," the Union sent Plaintiff a letter stating that his grievance lacked sufficient merit to prevail in arbitration.  (*Id.* ¶¶ 69, 74.)  Thereafter, the Union did not provide Plaintiff with an attorney in connection with his GAB appeal despite him having made a request for an attorney.  (*Id.* ¶¶ 75–77.)  These incidents were sufficient to put Plaintiff on constructive notice of the Union's alleged breach.

Moreover, there are no facts set forth in the First Amended Complaint suggesting that the Union considered transferring Plaintiff to a different building at any point during Plaintiff's

grievance proceedings. Nor does Plaintiff allege that the Union took any action to transfer Plaintiff to a different building at any time after the termination of his employment from Lumiere on September 1, 2021. Thus, despite Plaintiff's supposed expectation otherwise, an understanding which Plaintiff did not follow-up on until November 9, 2022, Plaintiff should have reasonably known that the Union had ceased representing him in connection with his grievance related to the Lumiere and had taken no action to transfer him to a different building at least as of July 17, 2023—six months before he filed his initial complaint and more than ten months after the termination of his employment at Lumiere. Therefore, Plaintiff cannot bring a timely claim. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989) ("[A] breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."). Accordingly, Plaintiff's duty-of-fair-representation claim is time barred.

Even if, however, Plaintiff's duty-of-fair-representation claim were timely—which it is not—and even if Plaintiff had sufficiently alleged that Lumiere breached the operative collective bargaining agreement, as is required to sustain a hybrid section 301/duty-of-fair-representation claim, Plaintiff has failed to allege any facts supporting the inference that the Union's conduct was "arbitrary, discriminatory, or in bad faith." *White*, 237 F.3d at 178–79. As conceded in his opposition, the sole conduct that Plaintiff relies on is the Union's "fail[ure] to honor the promise" that Szymanski allegedly made to Plaintiff regarding a possible transfer to another building. (Opp'n 8.) Plaintiff does not explicitly allege, nor do I read the First Amended Complaint to implicitly allege, that the Union acted discriminatorily in failing to transfer Plaintiff to another building.[4] Instead, Plaintiff alleges that the Union acted arbitrarily or in bad faith. *See White*,

---

[4] Because I find that Plaintiff's claim is time barred, I need not address Defendants' argument regarding the Union's

12

237 F.3d at 179.  Plaintiff fails to allege any facts which demonstrate that the Union's conduct is "so far outside a wide range of reasonableness as to be irrational," *Vaughn*, 604 F.3d at 709–10 (internal quotation marks omitted), or cross the "high threshold" required to prove bad faith, *Bejjani*, 2013 WL 3237854 at *11 (finding that a single statement of union representative alone does not demonstrate bad faith); *see also Vaughn*, 604 F.3d at 709–10 ("[T]actical errors are insufficient to show a breach of duty of representation; even negligence on the union's part does not give rise to a breach." (quoting *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).).  Accordingly, Defendants' motion to dismiss Plaintiff's hybrid section 301/duty-of-fair-representation claim is GRANTED.

### B.    *Plaintiff's Claims Under NYCHRL*

Having dismissed Plaintiff's sole federal claim, the only claim over which I had original jurisdiction, I now consider whether to exercise supplemental jurisdiction over Plaintiff's remaining claims, which all arise under NYCHRL.  A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)).  Courts "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" to decide whether to exercise supplemental jurisdiction. *Id.* at 117–18 (internal quotation marks omitted).  "Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's state law claims,

---

authority to transfer Plaintiff under the collective bargaining agreement, which was first raised in a reply brief. (Reply 2.)  In addition, "'[a]rguments raised for the first time in reply briefs are waived.'" *RL 900 Park LLC v. Ender*, No. 18-CV-12121, 2020 WL 70920, at *4 (S.D.N.Y. Jan. 3, 2020) (collecting cases).

13

including NYCHRL claims and common law torts, after dismissing all federal claims." *See Braunstein v. Sahara Plaza, LLC*, No. 16-CV-8879, 2021 WL 2650369, at *19 (S.D.N.Y. June 28, 2021) (collecting cases).

Here, having dismissed Plaintiff's only federal claim, I decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims. Permitting Plaintiff to pursue his state-law claims in state court would "avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice." *Moran v. Tryax Realty Mgmt, Inc.*, No. 15-CV-8570, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016) (internal quotation marks omitted) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Plaintiff's state-law claims are, therefore, dismissed.

## V.     Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in its entirety.

The Clerk of the Court is respectfully directed to terminate Document 32 and to close this case.

SO ORDERED.

Dated: July 15, 2025
      New York, New York

_____
Vernon S. Broderick
United States District Judge